## Mulcahy v. Mulcahy.

Nov. 16, 1945.

S. Jewell Rice for appellant.

J. J. McBrayer for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is an action for divorce filed in the Fayette circuit court on January 11, 1945, by appellant as plaintiff against the appellee as defendant. The only ground alleged in the petition for the relief sought was that "for more than six months last past the defendant has habitually behaved toward him in such cruel and inhuman manner as to indicate a settled aversion to him thereby permanently destroying his peace and happiness," and that he was not guilty of like fault. The petition then averred "that said cruelty consisted of (1) habitually accusing him of misconduct before their children and (2) following him to his place of employment and physically assaulting him before his fellow employees." (Our parenthesis.)

Defendant denied the only alleged ground for the relief sought by plaintiff, but she did not counterclaim for any affirmative relief on her part. It will thus be seen that the single issue to be determined by the court is one of fact which the court on final submission determined against plaintiff by dismissing plaintiff's prayer for an absolute divorce, but granted a divorce from bed and board and adjudged that plaintiff pay defendant's attorney's fee of $50. From that judgment plaintiff prosecutes this appeal upon the sole ground that

the court erred in not adjudging him an absolute divorce instead of one *a mensa et thoro.*

The parties were married in 1925, and at the time of the filing of the petition they had four living children whose ages were 16, 14, 12 and 7 years. Plaintiff was a bus driver for the Lexington Railway Company, whose shift terminated at midnight, after which he was supposed to return home to his family until the beginning of his shift the following day. The testimony—even as given by plaintiff himself—falls as far short of establishing his grounds for the relief sought as any other case with which we have come in contact. He testified that beginning the last of March, 1944, his wife began to "nag" him, but which the testimony develops consisted in her complaining about his failure to return home, after his work terminated, until 2, 3, or 3:30 o'clock in the early morning, and inquiring of him about rumors that came to her knowledge from neighbors and acquaintances of his suspicious attentions to and associations with other women, the latter of which he did not positively deny, but admitted that he frequently lingered without returning home after his work ceased until the hours above stated.

He did not attempt to state the words or exact expressions of defendant when she would upbraid him or inquire of him concerning the two matters referred to. It was established that when he did return home—after incurring the lingering habit—he was silent and more or less morose, engaging in but little, if any, conversation or greetings with either his wife or children. It is also indisputably shown that on one occasion when she was making such complaints he pushed her against a chair with such force as to cause an abrasion on one of her limbs causing it to bleed. He stated, in substance, that he entertained no love for his wife, and that he informed her that their marriage vows had ended, and that his determination that it should be so was such as to be beyond reconciliation. He furthermore testified that when he so informed her she cried, but which had no effect upon him or his determination. The rumors of his infidelity were more or less corroborated by his lingering away from home which tended to convince defendant of the truth of the rumors she had heard of her husband's philandering associations with other women.

Her conclusion was further corroborated by stains of lipstick found on his collar, the lapel of his coat, and upon his handkerchiefs after his belated returns home.

The petition, as we have seen, set out the nature and character of the cruelty and inhuman treatment charged against defendant, which were, (1) ''habitually accusing him of misconduct before their children,'' and (2) that ''she assaulted him before his fellow employees.'' We have related briefly, but substantially, the only proof of conduct (1) and from which it obviously appears that there was a complete failure to establish that accusation. The other one, No. (2), occurred after plaintiff left home, which he said was in August, 1944. On September 2 of the same year, and, of course, after his leaving defendant and his children, she—operating under the adage, ''Hell hath no fury like that of a woman scorned''—went to the garage of her husband's employer at about 11:20 P. M., the hour of his return from his last trip. Plaintiff stopped his bus some distance from the garage, and defendant then discovered only two persons therein, plaintiff and a woman, the two occupying the same seat and he embracing her. She thereupon forced her entrance into the bus and remarked to him, ''I have now caught you,'' and then proceeded to slap him in the face with her pocketbook or handbag, which produced some abrasion of the skin and at the same time she scratched him using her fingernails as weapons. The familiar adage referred to—the truth of which experience has proven—no doubt motivated that conduct on her part. However, that incident, as shown by the record, did not destroy her desire for her husband to return to his home and to assume his proper place in the theretofore happy family as he did prior to incurring the habits heretofore referred to. Therefore, whatever blame that might be attached to the defendant for the second item of conduct alleged in the petition, happened after plaintiff had separated himself from his wife and children.

The proof shows, and plaintiff admits, that his wife was a persistent, dutiful and loyal housekeeper, wife and mother until the more or less recent changes in her husband's conduct toward her and his family. She cooked and prepared his meals upon his visits to see the children after he left home, which were twice or three times

**a** week. According to the testimony she was perfectly justified in chiding him concerning his changed conduct, but the record discloses nothing on her part that could be characterized as cruelty. Plaintiff denied in his testimony that he was embracing the lady in the bus with him upon the occasion of his wife's assault, but he admitted that he was occupying the same seat with her, and that he "perhaps" had his hand on the back of the seat that the two were occupying. His entire testimony on both averments of cruelty was evasive, non-convincing and evasively given. His testimony as a whole clearly indicates that he had determined to sever the nuptial knot, whilst defendant through her tears and grief implored him to tighten it.

The cause was referred to the Court's Commissioner who took the proof and recommended that plaintiff's petition be dismissed. The court approved that recommendation insofar as an absolute divorce was sought, but gave to plaintiff a divorce from bed and board as hereinbefore stated, and from which defendant prosecutes no cross appeal, nor does plaintiff rely on any alleged error other than the one discussed herein. The judgment in dismissing the petition insofar as it sought an absolute divorce is abundantly sustained by the testimony and it is therefore affirmed.